IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JOHN EDWARD DUNCAN,

            Plaintiff,

     v.

CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL
SECURITY,[1]

         Defendant.

CIVIL ACTION FILE NO.

1:15-CV-2091-JFK

## FINAL OPINION AND ORDER

Plaintiff in the above-styled case brings this action pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of the Social Security Administration which denied his application for disability insurance benefits. For the reasons set forth below, the court **ORDERS** that the Commissioner's decision be **REVERSED** and **REMANDED** for further proceedings.

---

[1]Carolyn W. Colvin became Acting Commissioner of Social Security on February 14, 2013.

## I.      Background

Plaintiff Duncan (DOB: 6/27/59) is a retired firefighter from New York Fire Department ("NYFD").  Duncan left NYFD in September 2002 after serving twenty years and becoming eligible for retirement.  Plaintiff represents that for years he has suffered with osteoarthritis in his hips and knees as well as pulmonary dysfunction related to his onsite post-9/11 work.[2]  Although Plaintiff reports that he was beginning to experience symptoms associated with his physical impairments as early as 2002, Plaintiff first sought treatment in the fall of 2008.  Plaintiff underwent a full left hip replacement in January 2009.  Plaintiff continues to complain of significant pain in his right hip and both knees.

## II.     Procedural History

The claimant filed an application for a period of disability and disability insurance benefits on February 18, 2009, alleging that he became disabled on September 28, 2002.  (Record ("R.") 208–16 / Exh. 1D).  After his application was denied initially and on reconsideration, an administrative hearing was held on November 18, 2010.  (R. 60–77).  The Administrative Law Judge ("ALJ"), Linda R.

---

[2] "Osteoarthritis is caused by deformed or abnormal bone growth, or calcification. Arthritis can often cause severe pain." Social Security Disability Law & Procedure in Federal Court § 5:58 (2016).

Haack, issued a decision denying Plaintiff's application on December 16, 2010.  (R. 80–85 / Exh. 3A).  On February 16, 2011, Plaintiff requested review of the ALJ's hearing decision pursuant to 20 C.F.R. §§ 404.968 and 416.1468. (R. 153–60 / Exh. 13B).

On June 29, 2012, the Appeals Council vacated the ALJ's decision and remanded the case for resolution of the following:

> The hearing decision does not contain an adequate evaluation of the non-treating source opinion of Dr. Leland Stoddard, M.D., contained in Exhibit 3F. Specifically, in a statement dated June 3, 2009, Dr. Stoddard indicated that the claimant has osteoarthritis involving both hips, early arthritis in both knees, some chronic low back pain, and some pulmonary dysfunction, with the examining source ultimately concluding that the claimant is substantially disabled from any occupation that requires substantial standing, walking, kneeling, climbing, squatting, or bending and lifting.  However, the hearing decision does not contain any discussion of this opinion or address the weight assigned to it.

(R. 97 / Exh. 4A).  In addition, the Appeals Council directed the assigned ALJ to obtain updated evidence concerning the claimant's impairments (20 C.F.R. §§ 404.1512–1513), further develop the record with respect to certain specified areas, including the claimant's maximum residual functional capacity during the entire period at issue and, if warranted by the expanded record, the effect of the assessed limitations on the claimant's occupational base via expert testimony from a vocational

3

expert, as well as provide additional, specific rationale in accordance with the governing regulations and Social Security Rulings. (R. 96–99).

Following remand, a second evidentiary hearing was held on February 1, 2013, ALJ Richard L. Vogel presiding. (R. 39–59). During the hearing, counsel for Plaintiff amended the onset date to September 12, 2008.[3] (R. 43). In accordance with the direction of the Appeals Council, updated medical evidence was submitted by Plaintiff. (R. 41). In addition, the ALJ heard additional testimony from Plaintiff, primarily focused on the time period through March 31, 2009, as well as testimony from a vocational expert ("VE"). (R. 54–58). Plaintiff was 53 years old when he appeared for his second administrative hearing.

On February 22, 2013, the ALJ issued a decision denying Plaintiff's application a second time. (R. 11–38). The Appeals Council subsequently denied Plaintiff's request for review, rendering the ALJ's denial of benefits the final decision of the Commissioner. (R. 1–6).

The decision of ALJ Vogel (R. 23–26) states the relevant facts of this case as modified herein as follows:

---

[3] In light of Plaintiff's amended onset date and the date last insured, the relevant time period for purposes of the Court's substantial evidence review is September 12, 2008, through March 31, 2009. (R. 15, 41–43).

4

At the hearing, the claimant testified that he stopped working in September 2008.  He stated that his hip and knee pain began prior to March 2009.  He reported that he saw Dr. Brilliant, a specialist, in December 2008, who prescribed his handicapped placard; thereafter, he underwent a left total hip replacement in January 2009.  The claimant stated that he initially ambulated with a walker after surgery and then he progressed to a cane.  By March 31, 2009, the claimant testified that he was doing rehabilitation and that he was still using his walker.  He stated that the focus was mainly on his hip prior to March 31, 2009, but that his knees were also painful with crepitus and they limited his mobility.[4] He alleged that he took hot showers and elevated his knees for relief.   The claimant maintained that he overexerted himself easily but that he was able to attend his son's football games and help his children with their homework.  He reported that he fell at one of his son's games.  The claimant alleged that he could only stand for 10 minutes at a time and that he had to take breaks to sit and elevate or stretch his legs.  The claimant further alleged that he was unable to sit without alternating positions and that he could only lift up to 7 pounds.  He

---

[4] "Crepitus" is the plural of "crepitation," which is defined as "a grating or crackling sound or sensation (as that produced by the fractured ends of a bone moving against each other or as that in tissues affected with gas gangrene) <crepitation in the arthritic  knee>.  http://www.merriam-webster.com/medlineplus/crepitation, (last visited Feb. 24, 2016).

AO 72A
(Rev.8/82)

stated that he also suffered from pulmonary problems related to his work at the 9/11 site.  He testified that he has continued to see Dr. Brilliant for treatment of his knees and right hip and that he ambulates with a cane.  The claimant maintained that his condition has not improved.

In terms of the claimant's hips, treatment notes showed that the claimant suffered from a work-related right hip injury.  Upon examination in September 2008, the clamant ambulated with a normal gait and coordination and he showed normal motor strength bilaterally.  He was prescribed Naproxen for his right hip pain.  In December 2008, Ultracet was added to the claimant's medication regimen due to ongoing right hip pain.  (Exhibit 2F).  At another December 2008 examination, the claimant reported increasing pain in his left leg.  Upon examination, the claimant ambulated with a normal gait.

Subsequent x-rays revealed signs of old slipped capital femoral epiphyses, joint space narrowing and collapse of the femoral heads of both hips.  The claimant was assessed with bilateral hip osteoarthritis, and he was prescribed a cane for ambulation assistance and Naprosyn for his pain.  (Exhibits 8F and 11F).  In January 2009, the claimant was diagnosed with osteoarthritis of the left hip; thereafter, he underwent a left total hip replacement.  The claimant was discharged with a walker and Lortab for his pain. (Exhibits 1F and 6F).  Treatment notes from February 2009 showed the

AO 72A
(Rev.8/82)

claimant's wound was healing well. (Exhibit 2F). Physical therapy notes from February through May 2009 showed that the claimant met all goals with ambulation and range of motion exercises for the left hip. (Exhibit 7F).

Similarly, treatment notes from April 2009 showed the claimant was ambulating well. (Exhibit 8F). At a June 2009 examination, the claimant ambulated with a minor limp that favored his right side. The claimant performed right hip abduction to 20 degrees, adduction to 10 degrees, flexion to 90 degrees, internal rotation to 20 degrees, external rotation to 25 degrees and extension to 15 degrees. He also performed left hip abduction to 20 degrees, adduction to 10 degrees, flexion to 40 degrees, internal rotation to 20 degrees, external rotation to 25 degrees and extension to 15 degrees. Subsequent x-rays of the hips showed osteoarthritis of the right hip and a normal appearance of the left hip post left total hip arthroplasty; however, the claimant was assessed with osteoarthritis of both hips. Although the claimant ambulated with a cane and he could not tandem walk, he was able to heel/toe walk and displayed normal muscle strength and reflexes. (Exhibit 3F). In February 2010, the claimant reported only occasional right hip pain, but he denied any complaints with his left hip. Upon examination, he ambulated well with only a minimal limp to the right side. He showed good strength, and his left hip replacement wound was well-healed. Subsequent x-rays of the hips revealed moderate osteophytic changes of

7

the right hip and good position for the left total hip replacement.  Overall, there were no significant changes from prior x-rays.  The claimant was assessed with osteoarthritis of the right hip status post left total hip replacement.  He was instructed to follow up in one year or sooner if he wished to undergo a right total hip replacement. (Exhibit 8F).  In April 2010, the claimant was prescribed a handicapped placard due to his use of a cane.  (Exhibit 12F).  Notably, July 2010 treatment notes showed that his hips were doing well and that he only complained of some right hip pain.  The claimant showed a good range of motion in the left hip.  (Exhibit 8F).

In terms of the claimant's knees, the claimant reported ongoing bilateral knee pain in January 2009; however, physical therapy notes from February through May 2009 showed that the claimant met all goals with ambulation and range of motion exercises for the bilateral knees. (Exhibit 7F).  In April 2009, the claimant was prescribed Naprosyn for his bilateral knee pain and swelling. (Exhibit 8F).  At a June 2009 examination, the claimant exhibited a mild varus orientation of the knees; however, there was no evidence of crepitus or effusions.  The claimant was unable to squat, but his muscle strength and reflexes were normal.  Notably, the claimant performed 130 out of 150 degrees of knee flexion bilaterally.  Subsequent x-rays of the knees revealed mild to moderate osteoarthritis of both knees.  (Exhibit 3F).  In July 2010, the claimant complained of right knee pain.  Upon examination, the

8

claimant exhibited some crepitus, but there were no effusions.  July 2010 x-rays of the right knee showed early osteoarthritic changes.  In July and August 2010, the claimant was given injections of Depo-Medrol and Marcaine in the right knee.  (Exhibit 8F).  Treatment notes from October 2010 showed that the claimant's knees had improved.  (Exhibit 17F).

Plaintiff filed his complaint in the U.S. District Court, District of South Carolina, on June 27, 2014, seeking judicial review of the Commissioner's final decision.  (Doc. 1). The case was transferred to this district on June 11, 2015, upon the Commissioner's Motion to Dismiss or Transfer Venue to the Northern District of Georgia. (Doc. 19). The parties have consented to proceed before the undersigned Magistrate Judge.

### III.   Standard

An individual is considered to be disabled if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A).   The impairment or impairments must result from anatomical, psychological, or physiological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques and must be of such severity

9

that the claimant is not only unable to do his previous work but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  See 42 U.S.C. §§ 423(d)(2) and (3).

"We review the Commissioner's decision to determine if it is supported by substantial evidence and based upon proper legal standards." Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  Id. at 1440.  "Even if the evidence preponderates against the [Commissioner's] factual findings, we must affirm if the decision reached is supported by substantial evidence." Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). "'We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].'" Phillips v. Barnhart, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (quoting Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983)).

"The burden is primarily on the claimant to prove that he is disabled, and therefore entitled to receive Social Security disability benefits." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing 20 C.F.R. § 404.1512(a)).  Under the regulations as promulgated by the Commissioner, a five step sequential procedure is followed in order to determine whether a claimant has met the burden of proving his disability.  See Doughty, 245 F.3d at 1278; 20 C.F.R. §§ 404.1520, 416.920.  At step

10

one, the claimant must prove that he has not engaged in substantial gainful activity. See id.  The claimant must establish at step two that he is suffering from a severe impairment or combination of impairments.  See id.  At step three, the Commissioner will determine if the claimant has shown that his impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  See Doughty, 245 F.3d at 1278; 20 C.F.R. §§ 404.1520, 416.920.  If the claimant is able to make this showing, he will be considered disabled without consideration of age, education, and work experience. See id.  "If the claimant cannot prove the existence of a listed impairment, he must prove at step four that his impairment prevents him from performing his past relevant work."  Doughty, 245 F.3d at 1278.  "At the fifth step, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides his past relevant work."  Id.  If, at any step in the sequence, a claimant can be found disabled or not disabled, the sequential evaluation ceases and further inquiry ends.  See 20 C.F.R. §§ 404.1520(a), 416.920(a).

AO 72A
(Rev.8/82)

## IV.   Findings of the ALJ

The ALJ made the following findings of fact and conclusions of law:

1.   The claimant meets the insured status requirements of the Social Security Act through March 31, 2009.  (R. 18).

2.   The claimant has not engaged in substantial gainful activity since September 12, 2008, the alleged amended onset date.  (20 C.F.R. §§ 404.1571, *et seq.*).  (R. 19).

3.   The claimant has the following severe impairments: osteoarthritis with left hip replacement and osteoarthritis of the right hip and knees.  (20 C.F.R. § 404.1520(c)). (R. 19–20).

4.   The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526).  (R. 20–21).

5.   The claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b), subject to the following limitations.  Specifically, claimant could lift and carry up to 20 pounds occasionally and 10 pounds frequently and stand, walk, and sit for 6 hours each in an 8-hour work day.  The claimant could never climb, crawl, balance or kneel, and he needed a sit/stand option at will. Additionally, claimant could never tolerate exposure to hazards or tolerate concentrated exposure to lung irritants.  (R. 22–30).

6.   Through the date last insured, the claimant was unable to perform any past relevant work.  (20 C.F.R. § 404.1565).  (R. 30).

7.   The claimant was born on June 27, 1959, and was 49 years old, which is defined as a younger individual age 18–49, on the date last insured.  The claimant subsequently changed age category to closely approaching advanced age.  (20 C.F.R. § 404.1563).  (R. 30).

AO 72A
(Rev.8/82)

8.     The claimant has at least a high school education and is able to communicate in English. (20 C.F.R. § 404.1564).  (R. 30).

9.     Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.  (See SSR 82–41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).  (R. 31).

10.    Considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed. (20 C.F.R. §§ 404.1569 and 404.1569(a)).  (R. 31–33).

11.    The claimant has not been under a disability, as defined in the Social Security Act, from September 12, 2008, through the date of the last insured, March 31, 2009.  (20 C.F.R. §§ 404.1520(g) and 416.920(g)).  (R. 33).

## V.    Discussion

On appeal, Plaintiff Duncan asserts that the ALJ committed reversible error by 1) failing to give controlling weight to the medical opinion of Plaintiff's treating orthopedist, Dr. Brilliant;  2)  assigning great weight to the findings of Dr. Stoddard yet only incorporating a portion of Dr. Stoddard's findings into the RFC without adequately explaining why the remaining limitations were not also attributed great weight; 3) failing to include Plaintiff's  need for the use of a cane within the RFC (and hypothetical to the vocational expert) or explain why claimant's cane was not incorporated into the RFC; and 4) improperly assessing Plaintiff's credibility.  The

13

Court begins with discussion of Dr. Stoddard's opinion concerning Plaintiff's functional limitations and RFC (issues two and three), which are deemed determinative. As discussed herein, the ALJ's treatment of Dr. Stoddard's opinion, although a legal question of proper evaluation of a medical opinion, also bears upon the ALJ's assessment of Plaintiff's RFC and is discussed in context.

### A.   Residual Functional Capacity

The gist of Plaintiff's challenge to the denial of benefits is that the medical evidence and opinions relied upon and credited by the ALJ simply cannot be reconciled with a light work residual functional capacity ("RFC") because light work by definition requires "a good deal of walking or standing."[5]

Here, the ALJ's RFC for Plaintiff Duncan reads:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b). Specifically,

---

[5] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, **a job is in this category when it requires a good deal of walking or standing**, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b) (emphasis added).

14

> the claimant could lift and carry up to 20 pounds occasionally and 10 pounds frequently and stand, walk, and sit for 6 hours each in an 8-hour work day. The claimant could never climb, crawl, balance or kneel and he needed a sit/stand option at will. Additionally, he could never tolerate exposure to hazards or tolerate concentrated exposure to lung irritants.

(R. 22). Of particular relevance, the RFC contemplates the ability to stand, walk, and sit for 6 hours, a complete inability to balance (never balance), and a sit/stand option at will.[6]

During oral argument, the Commissioner recognized that Plaintiff's RFC did not fall squarely within the category of light work but rather fell somewhere in between the light and sedentary exertional levels.[7] Notably, if Plaintiff's RFC as

---

[6] The ALJ's treatment of lifting within the RFC, although potentially inconsistent with a prohibition on "substantial lifting," does not appear to be determinative. Although not discussed at length, Plaintiff's capacity for lifting, and the RFC finding concerning lifting, is considered along and in combination with the other functional limitations identified in the RFC.

[7] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. **Jobs are sedentary if walking and standing are required occasionally** and other sedentary criteria are met." 20 C.F.R. § 404.1567(a) (emphasis added). "Occasionally" translates as "occurring from very little up to one-third of the time." SSR 83-10. More specifically, **"occasionally" means that "periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday**, and sitting should generally total approximately 6 hours of an 8-hour workday." Id.

AO 72A
(Rev.8/82)

found by the ALJ was sedentary rather than light, a finding that Plaintiff is disabled would be permitted by a non-mechanical application of Medical-Vocational Rule 201.14 (and directed if three months later since claimant's fiftieth birthday was three months after the date last insured).[8]  See 20 C.F.R. Pt. 404 Subpt. P, App. 2 § 201.14 (2015); 20 C.F.R. § 404.1563(b) (2015) (not applying the age categories mechanically in a borderline situation).   In situations such as this, where the RFC falls in between two exertional levels that each warrant different outcomes, SSR 83-12 recognizes the difficulty and provides the following adjudicative guidance:

> 2. If the exertional level falls between two rules which direct opposite conclusions, i.e., "Not disabled" at the higher exertional level [Light] and "Disabled" at the lower exertional level [Sedentary], consider as follows:
>
> a. An exertional capacity that is only slightly reduced in terms of the regulatory criteria could indicate a sufficient remaining occupational base to satisfy the minimal requirements for a finding of "Not disabled."
>
> b. On the other hand, if the exertional capacity is significantly reduced in terms of the regulatory definition, it could indicate little more than the occupational base for the lower rule and could justify a finding of "Disabled."
>
> c. In situations where the rules would direct different conclusions, and the individual's exertional limitations are somewhere "in the middle" in terms of the regulatory criteria for exertional ranges of work, more

(emphasis added).

[8] It is for this reason that Plaintiff urges the Court to reverse the decision of the Commissioner and direct the calculation and payment of benefits rather than remand for further administrative proceedings.

16

difficult judgments are involved as to the sufficiency of the remaining occupational base to support a conclusion as to disability. Accordingly, VS assistance is advisable for these types of cases.[9]

SSR 83-12, at *2–3 (1983).  With this framework in mind, the Court now turns to the specific issues raised on appeal.

### 1.    Failure to Incorporate Functional Limitations Within Dr. Stoddard's Opinion Without Explanation

Plaintiff asserts that the ALJ erred in adopting only a portion of Dr. Leland Stoddard's opinion which he determined was entitled great weight.  (R. 28).  Plaintiff further suggests that to the extent the ALJ failed to adopt and incorporate all of the functional limitations identified by Dr. Stoddard within the RFC, the ALJ did not adequately explain his reasoning.  The undersigned agrees that the ALJ committed error.

Social Security Ruling ("SSR") 96-8p provides that, "[t]he RFC assessment must always consider and address medical source opinions.  If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."  SSR 96-8p.  Accordingly, in the Eleventh Circuit, when an ALJ assigns great weight to a medical opinion, he is required to adopt the

---

[9] SSR 83-12 states that "the term vocational specialist (VS) describes all vocational resource personnel."  SSR 83-12, at *2.

limitations contained in the opinion or explain why he is discounting the limitations. See Watkins v. Comm'r of Social Security, 457 Fed. Appx. 868, 871–72 (11th Cir. 2012) (finding that the ALJ erred when he "gave great weight to Dr. Feussner's RFC evaluation" but failed to incorporate the physician's "sit/stand limitation into his RFC finding or to give a reason for not doing so").  In the present case, the ALJ's RFC assessment conflicts with the opinion of Dr. Stoddard despite the ALJ's representation that he gave great weight to the examining physician's opinion.

The Appeals Council remanded the case in large part to obtain from the ALJ an adequate evaluation of the non-treating source opinion of Dr. Stoddard and specifically Dr. Stoddard's June 3, 2009, statement.[10]  (R. 97 / Exh. 4A).   Dr. Stoddard, a retained state agency consultant, examined Plaintiff on June 3, 2009, a few months after the date last insured and approximately three weeks prior to claimant's fiftieth birthday.   (R. 326–32).   In his written report, Dr. Stoddard observed that claimant had limited motion in his lower back, both hips, and both knees and described claimant's complaints of pain in his right hip, both knees, and lower back. (R. 327).  Dr. Stoddard confirmed via x-ray Plaintiff's diagnoses of osteoarthritis in both knees, mild to moderate in severity, and osteoarthritis in Plaintiff's right hip.  (R.

_____

[10] Dr. Stoddard's medical opinion was obviously considered probative to the Appeals Council.

328).  Following his examination of claimant, Dr. Stoddard also surmised that Plaintiff suffered from "chronic low back pain most likely as a result of degenerative disc disease which could have been aggravated by a limp from hip pathology."[11]  (R. 328). Dr. Stoddard commented on Plaintiff's lower back pain becoming aggravated by having to sit in one position for long periods of time and that his knee pain worsens with activities requiring claimant to be on his feet.  (R. 327).  Dr. Stoddard opined that Plaintiff was "**substantially disabled from any occupation that requires substantial standing, walking, kneeling, climbing, squatting, or bending and lifting.**"  (R. 97 / Exh. 3F) (emphasis added).  With respect to Dr. Stoddard's opinion, the ALJ's wrote that he "accords this opinion great weight by incorporating limitations on climbing, crawling, balancing, kneeling and prolonged sitting and standing."  (R. 28).  Despite the earlier instruction from the Appeals Council, the ALJ's RFC does not expressly speak to Dr. Stoddard's restriction precluding claimant from work requiring

---

[11]  In September 2011, Plaintiff had back surgery (L2-3 and L3-4 lumbar decompression and fusion for right lower extremity intractable pain), which has improved his lower back pain.  (R. 385–95, 399–402, 411–18 / Exhs. 14F, 16F, 18F).  Plaintiff's back procedure in 2011, beyond the date last insured (and not directly relevant to the instant claim), likely accounts for some of the more recent improvement in claimant's pain and overall mobility.  For purposes of the issues raised on appeal, claimant's subsequent back procedure tends to show that claimant was not exaggerating his back-related symptoms.

substantial standing, walking and lifting.[12]  Equally troublesome, the ALJ does not

explain why these functional limitations are not incorporated into the RFC and also

assigned great weight.[13]  See Watkins, 457 Fed. Appx. at 871–72; see also Rosario v.

Comm'r of Social Security, 2014 WL 667797, at *3 (M.D. Fla. February 20, 2014)

(citations omitted).

Eleventh Circuit law is clear that an ALJ cannot reject portions of a medical

opinion without providing a reasoned explanation for doing so.   See Winschel v.

Comm'r of Social Security, 631 F.3d 1176, 1178–79 (11th Cir. 2011); see also Walker

v. Bowen, 826 F.2d 996, 1001 (11th Cir. 1987).  In Rosario, the court found reversible

error where the ALJ had given significant weight to a medical opinion but failed to

include portions of the same opinion into the RFC.  Rosario, 2014 WL 667797, at

*2–3.  The Rosario court acknowledged that an "ALJ is not required to include every

limitation into his . . . RFC determination simply because he . . . assigned great or

---

[12] As for Dr. Stoddard's proposed limitation concerning substantial standing, the RFC includes a sit/stand option, the effect of which is discussed, *infra*.  (See Section IV, A, 2). The ALJ also added a limitation that Plaintiff could "never balance."

[13] SSR 06-03p draws a distinction between the meaning of "consider" and "explain" or evaluate. SSR 06-03p (2007). "Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, **the adjudicator generally should explain the weight given** . . . ." Id. (emphasis added).

significant weight to a medical opinion." <u>Id.</u>, at *2 (citing 20 C.F.R. § 404.1527(e)(2)(i)).  However, "the ALJ . . . is required to provide a reasoned explanation as to why he . . . chose not to include particular limitations in his . . . RFC determination." <u>Id.</u> (citations omitted).

Asserting that this error warrants reversal, Plaintiff relies upon <u>Lapica v. Comm'r of Social Security</u>, 501 Fed. Appx. 895 (11th Cir. 2012).  In <u>Lapica</u>, which the Court also finds instructive, the Eleventh Circuit found reversible error where the ALJ's hypothetical to the vocational expert was inconsistent with the more specific medical opinion of the treating physician the ALJ purportedly gave substantial or considerable weight.[14]  <u>Id.</u> at 899.  The treating physician in <u>Lapica</u> opined that Plaintiff could sit for only four hours (up to two hours at a time), stand for two hours (up to twenty minutes at a time), and walk for two hours (up to twenty minutes at a time and occasionally with a cane) in an eight-hour day.  <u>Id.</u>  The ALJ subsequently

---

[14] In <u>Lapica</u>, the appellate panel discussed the ALJ's application of the Grids, namely, Grid Rules 201.14 and 201.15. <u>See Id.</u> at 897–98 (explaining that the difference between the two rules is whether or not the claimant has transferability of skills).  As spelled out in <u>Lapica</u>, individuals who are closely approaching advanced age, are high school graduates, and have skilled or semi-skilled work experience and those skills are "not transferable," the claimant is disabled. <u>Id.</u> at 897–98; Grid Rule 201.14.  Given the facts here, Plaintiff's suggestion that the ALJ settled on a light exertional level for Plaintiff Duncan's RFC in order to avoid a Grid Rule directing a finding that claimant is disabled is persuasive.

determined that the claimant was capable of performing sedentary work. Id. Rather than incorporate the sitting limitation into the hypothetical to the VE, the ALJ asked the VE to assume Lapica was capable of "performing the exertional demands of light work with the additional limitation that she needs to sit to rest." Id. The ALJ also asked the VE to consider "the sit/stand option . . . at will" in determining whether claimant could perform any other jobs. Id. The Eleventh Circuit held that the ALJ's RFC was inconsistent with the limitations imposed by the treating physician as well as the exertional requirements for sedentary work, which generally requires the ability to sit for approximately six hours. Id. (citing Kelley v. Apfel, 185 F.3d 1211, 1214 (11th Cir. 1999)). Likewise, the Eleventh Circuit held that, notwithstanding the "sit/stand option at will," the hypothetical to the VE did not expressly incorporate the RFC opinion of the treating physician and, therefore, it was unclear as to whether jobs existed in sufficient numbers in the national economy that Lapica could perform. Id. Finding that the Commissioner's findings were not supported by substantial evidence, the Eleventh Circuit affirmed in part, vacated and remanded in part for additional proceedings. Id.

22

Not unlike <u>Lapica</u>, the ALJ's RFC for Plaintiff Duncan does not incorporate all of the specific functional limitations proposed by Dr. Stoddard.[15]  The ALJ provides no explanation as to why certain limitations are incorporated and others are not.  More particularly, Dr. Stoddard found Plaintiff substantially disabled from any occupation requiring substantial standing and walking.[16]  Akin to the <u>Lapica</u> holding that the RFC did not line up with the treating physician's functional limitations or the essential parameters of sedentary work, the ALJ's light work RFC for this claimant is inconsistent with Dr. Stoddard's opinion.  20 C.F.R. § 404.1567(b) (light work contemplates "a good deal of walking or standing").  Similarly, as in <u>Lapica</u>, merely including a sit/stand at-will option does not cure the ALJ's error in failing to articulate why he chose to adopt only a portion of Dr. Stoddard's opinion and assign only certain findings great weight.[17]  At minimum, the ALJ's evaluation of Dr. Stoddard's medical

---

[15] The fact that Dr. Stoddard is not Plaintiff's treating physician is of no moment given that Dr. Stoddard examined Plaintiff and the ALJ determined that his medical opinion was entitled to great weight.

[16] Indeed, both Dr. Stoddard and Dr. Brilliant opined that Plaintiff was unable to perform work requiring prolonged or substantial standing.  (R. 328, 367).

[17] According to the Commissioner, the ALJ's inclusion of a "sit/stand option" suggests that the ALJ implicitly incorporated all of Dr. Stoddard's functional limitations – including no substantial standing or walking – despite  not expressly stating so.  The ALJ's decision does not make his rationale clear.  See <u>Winschel</u>, 631

opinion frustrates the Court's substantial evidence review.   See Rosario, 2014 WL 667797, at *3 ("The ALJ, however, provided no such explanation, thus preventing meaningful review of the ALJ's decision to not include . . . limitation[s] to which [he] otherwise gave significant weight.")

For these reasons, remand is required on this issue.

### 2.      Failure to Incorporate Plaintiff's Use of a Cane

Plaintiff next contends that the ALJ erred in failing to include his need for the use of a cane within the RFC and/or failing to explain why this limitation was omitted. The Commissioner contends that even if deemed error to omit claimant's need for a cane in formulating the RFC and hypothetical to the VE, inclusion of a "sit/stand option" rendered any purported error harmless.[18]   The Court is not persuaded.

---

F.3d  at 1179; and see Rosario, 2014 WL 667797, at *3.

[18] When asked by counsel whether Plaintiff's need for a cane to stand and/or ambulate would interfere with his expert opinion as to the existence of certain jobs in the national economy, and specifically the small parts assembler job, the VE conceded that it would but was unable to explain "how it would affect the overall numbers." (R. 55–56).  The VE testified that, with respect to ticket taker jobs, Plaintiff's need for a cane would not entirely erode the available occupation base in that there would still be 1,880 ticket taker jobs in the State of South Carolina and 105,560 jobs in the national economy.  The third job discussed, storage facility clerk, was arguably ruled out with an RFC that included use of a cane.  (R. 56–58).  The Commissioner appears to be of the view that the storage facility clerk job would remain an option.

24

"'In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments.'" Winschel, 631 F.3d at 1180 (quoting Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002)).  In his hypothetical to the VE here, the ALJ did not ask how use of a cane would impact or erode the available occupation base but rather asked the VE to contemplate that Plaintiff would require a "sit/stand option at will." (R. 54).

"'To find that a hand-held assistive device, such as a cane, is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information).'" Norman v. Comm'r of Social Security, 2015 WL 4397150, at *5 (M.D. Fla. July 16, 2015) (quoting Wright v. Colvin, 2014 WL 5591058, at *4 (S.D. Ga. Nov. 3, 2014)).  "'Moreover, a prescription or the lack of a prescription for an assistive device is not necessarily dispositive of medical necessity.'" Id. (quoting Wright, 2014 WL 5591058, at *4).

It is undisputed that Plaintiff was prescribed a cane for use during the relevant time period, and the Commissioner does not seriously contest that Plaintiff's cane was

medically necessary.  Plaintiff confirmed that he still uses his cane and testified that he uses it as needed.  (R. 70–71) ("By the end of the day if, if I'm having trouble, difficulty walking I will use the cane.").  Even so, the record does not make clear the extent to which Plaintiff had to rely on the cane in terms of terrain, slope, and/or hours during the day or how standing or walking for 6 hours or more might affect claimant's pain.   In fashioning Plaintiff's RFC, the ALJ did not include that claimant required the use of a cane occasionally or otherwise.   Instead, the ALJ included in claimant's RFC that he "needed a sit/stand option at will."  (R. 22).

For a better understanding of this issue, the Court looks again to SSR 83-12, which recognizes the difficulty of these decisions.  The "Special Situation" section of SSR 83-12 reads in pertinent part:

1. *Alternate Sitting and Standing*

In some disability claims, the medical facts lead to an assessment of RFC which is compatible with the performance of either sedentary or light work except that the person must alternate periods of sitting and standing.  The individual may be able to sit for a time, but must then get up and stand or walk for awhile before returning to sitting. Such an individual is not functionally capable of doing either the prolonged sitting contemplated in the definition of sedentary work (and for the relatively few light jobs which are performed primarily in a seated position) or the prolonged standing or walking contemplated for most light work. (Persons who can adjust to any need to vary sitting and standing by doing so at breaks, lunch periods, etc., would still be able to

perform a defined range of work.)

There are some jobs in the national economy--typically professional and managerial ones--in which a person can sit or stand with a degree of choice. If an individual had such a job and is still capable of performing it, or is capable of transferrng work skills to such jobs, he or she would not be found disabled. **However, most jobs have ongoing work processes which demand that a worker be in a certain place or posture for at least a certain length of time to accomplish a certain task. Unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will.** In cases of unusual limitation of ability to sit or stand, a VS should be consulted to clarify the implications for the occupational base.

SSR 83-12, at *4 (1983) (emphasis added).[19] The undersigned questions whether the need for use of a cane, even if only occasionally, and inability to balance might be considered an "unusual limitation of ability to sit or stand." Id.

In support of her argument that the sit/stand option remedies any error harmless, the Commissioner relies upon Moore v. Comm'r of Social Security, 478 Fed. Appx. 623 (11th Cir. 2012). In Moore, claimant's physician opined that Moore was "unable

------

[19] SSR 96-9p, which addresses a claimant's ability to perform less than the full range of sedentary work, speaks to knee impairment and highlights how the occupational base may be eroded depending on whether a claimant has an impairment that affects one or two lower extremities. SSR 96-9p. As one might expect, the occupational base is eroded more where both lower extremities are impaired. SSR 96-9P, at *7 (adjudicator must always consider the particular facts of a case when considering medically required hand-held assistive devices). Plaintiff Duncan is diagnosed with osteoarthritis in both knees.

AO 72A
(Rev.8/82)

to walk on uneven ground at a reasonable pace and could walk only 250 feet without a cane." Id. at 625.  The ALJ determined claimant Moore's RFC to be as follows: to perform light work activity with occasional limitation for bending, stooping, crouching and kneeling, but capable of performing routine, predictable tasks in an atmosphere that allowed for a sit/stand option. Id. at 624.  In the context of a light work RFC, the VE was not asked to consider the distance Moore was capable of walking without a cane nor was the VE asked about Moore's ability to walk on uneven ground at a reasonable pace. Id.  Instead, the ALJ's hypothetical question limited available jobs to those that required "performing routine, predictable tasks in an atmosphere that allows for a sit/stand option." Id. at 625 (citation and internal quotation omitted). The appellate court explained that "the 'sit/stand option' expressly limited the available jobs to those permitting constant access to a chair." Id. Notwithstanding failure to include use of a cane in his RFC, the Eleventh Circuit stated that the hypothetical accounted for all of the limitations stemming from Moore's impairments and held that substantial evidence supported the Commissioner's denial of benefits. Id.

In the instant case, the Court finds that the ALJ's errors in formulating the RFC, however, bear upon the VE testimony and preclude reliance on the same.  Accepting

28

the ALJ's RFC that Plaintiff could "stand, walk, and sit for 6 hours each in an 8-hour work day," could never balance, and requires a sit/stand option at will, and presuming this RFC to be supported by substantial evidence, the hypothetical posed to the VE did not adequately present all of Plaintiff's functional limitations.[20] Id.

Accordingly, on this record and these facts, the Court finds that the ALJ's RFC determination is not supported by substantial evidence.[21]  The Court further finds that for all of the reasons articulated by Plaintiff and explained herein, the ALJ did not apply the proper legal standard in formulating and explaining claimant's RFC, thereby preventing this Court from conducting the requisite review.  Therefore, remand is required and the Commissioner's harmless error argument under Moore is not persuasive.

_____

[20] As previously discussed with respect to Dr. Stoddard's RFC, in Lapica, the Eleventh Circuit held that, notwithstanding the "sit/stand option at will," the hypothetical to the VE did not expressly incorporate the RFC opinion of the treating physician and, therefore, held that the VE testimony could not be relied upon. As was the case in Lapica, supra, substantial evidence does not support the ALJ's RFC and hypothetical to the VE where all of claimant's functional limitations are not accounted for.  Lapica, 501 Fed. Appx. at 898–99. The Moore and Lapica decisions and treatment of the "sit/stand option at will" are not easily reconciled.  In any event, these decisions are fact and case-specific.

[21] Prior to remand, the VE present during the original evidentiary hearing before the ALJ testified that, if Plaintiff had to stand, he would have difficulty performing assembly work while holding a cane.  (R. 75).

29

### B.    Failure To Assign "Controlling Weight" To Dr. Brilliant's Opinion

The next issue Plaintiff raises is whether the ALJ erred in assigning little weight rather than controlling weight to the opinion of Plaintiff's treating orthopedic surgeon, Howard L. Brilliant, M.D., of Parkwood Orthopaedic Clinic, LLC.   Dr. Brilliant provided a statement to counsel for Plaintiff concluding that Plaintiff Duncan's knee and hip pain impose limitations that would prevent claimant from performing competitive work.[22]  (R. 56–67, 367).

It is well established that the determination about whether a claimant has met the statutory definition of disability is reserved to the Commissioner and, for that reason, a medical source's opinion that a claimant is disabled is not controlling.  See 20 C.F.R. §§ 404.1527(d), 416.927(d). Nonetheless, regulations promulgated by the Social Security Administration state in part:

> (2)    Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective

---

[22] In January 2009, Dr. Brilliant authorized a handicapped sticker (Disabled Placard) for Plaintiff based upon osteoarthritis in his hips.  (R. 378).   In the Physician's Statement supporting the application, Dr. Brilliant represented that claimant has an obvious physical disability, was required to use crutches and a cane, and that claimant's disability was permanent.  (R. 378).

> medical findings alone or from reports of individual examinations. . . .
>
> > (i)    Generally, the longer a treating source has treated you . . . the more weight we will give to the source's medical opinion. . . .

20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  A treating source's opinion will be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record.  Id.  If the treating source's opinion is not given controlling weight, then the Commissioner is required to apply the following six factors in determining the weight to give the opinion: (1) length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) supportability; (4) consistency; (5) specialization; and (6) any other relevant factors.  See 20 C.F.R. §§ 404.1527(c), 416.927(c).

The Eleventh Circuit has consistently held that opinions of treating physicians must be accorded substantial or considerable weight by the Commissioner unless good cause exists to discredit these opinions.  See Lewis, 125 F.3d at 1440; Lamb v. Bowen, 847 F.2d 698, 703 (11th Cir. 1988); Walker, 826 F.2d at 1000; MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986); Broughton v. Heckler, 776 F.2d 960, 961 (11th Cir. 1985).  "Good cause exists 'when the: (1) treating physician's opinion was not

31

bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.'" <u>Winschel</u>, 631 F.3d at 1179 (quoting <u>Phillips</u>, 357 F.3d at 1241). An ALJ may disregard a treating physician's opinion with good cause, but his reasons for doing so must be clearly articulated in his decision. <u>Id.</u>

ALJ Vogel determined that Dr. Brilliant's opinion was entitled to "little weight" because his opinion as to functional limitations was inconsistent with the record as a whole, including Plaintiff's reported daily activities.   (R. 28–29).   The ALJ/ Commissioner was also troubled that Dr. Brilliant's opinion was reported on a form letter provided by Plaintiff's counsel and that the opinion was not obtained until January 2010.

In light of the Court's analysis of the issues affecting the ALJ's RFC determination, the Court need not decide whether the ALJ applied the proper legal standard in evaluating Dr. Brilliant's medical opinion.  Briefly, the undersigned highlights the following facts of record:  Plaintiff began treatment with Dr. Brilliant in 2008; Dr. Brilliant, an orthopedist, is a specialist in his field; Dr. Brilliant is the surgeon who performed Plaintiff's left hip replacement in 2009; following left hip replacement, Dr. Brilliant has consistently monitored Plaintiff's orthopedic complaints

32

and provided regular treatment (visits ranging in frequency anywhere from every 2 weeks to every 3 months) to assist Plaintiff with his ongoing complaints not fully resolved to date, namely, claimant's osteoarthritis in his right hip and both knees; and Dr. Brilliant referred Plaintiff to physical therapy.  The Commissioner may revisit Dr. Brilliant's medical opinion, and the appropriate weight to assign it, in conjunction with any other administrative proceedings.[23]

## C.    Improperly Assessing Plaintiff's Credibility

Finally, Plaintiff argues that the ALJ improperly discredited Plaintiff and his subjective complaints of pain and limitations.   According to Plaintiff, the ALJ relied on isolated events (i.e., claimant's attendance at a single ball game) as opposed to longstanding symptoms and historical treatment to find claimant less than entirely credible.

Where a claimant's testimony, if credited, could support the claimant's disability, the ALJ must make and explain a finding concerning the credibility of the claimant's testimony.  See Viehman v. Schweiker, 679 F.2d 223, 227-28 (11th Cir.

---

[23] Indeed, administrative proceedings on remand may have a bearing on the Commissioner's evaluation of the supportability and consistency of Dr. Brilliant's medical opinion with the overall record including Dr. Stoddard's findings.

33

1982).  "If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so." <u>Wilson</u>, 284 F.3d at 1225 (citing <u>Hale v. Bowen</u>, 831 F.2d 1007, 1011 (11th Cir. 1987)).  The relevant Social Security regulations provide that factors which will be considered by the ALJ in evaluating a claimant's subjective symptoms include: daily activities; location, duration, frequency, and intensity of the claimant's symptoms; precipitating and aggravating factors; type, dosage, effectiveness, and side effects of any medication the claimant takes to alleviate his symptoms; treatment received and measures used, other than medication, for the relief of symptoms; and any other factors concerning the functional limitations and restrictions due to the claimant's symptoms.  <u>See</u> 20 C.F.R. §§ 404.1529, 416.929; SSR 96-7p.  "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." <u>Foote v. Chater</u>, 67 F.3d 1553, 1562 (11th Cir. 1995) (citing <u>MacGregor</u>, 786 F.2d at 1054).

Despite finding that Plaintiff's underlying medically determinable impairments could reasonably be expected to produce the alleged symptoms, ALJ Vogel found that

34

Plaintiff's symptoms were not as limiting as he alleged.[24]  (R. 22–23). The ALJ acknowledged that claimant received treatment for his severe impairments throughout the relevant time period.   There is no evidence that claimant was ever non-compliant or otherwise failed to participate fully in recommended treatment.

Still, the ALJ determined that Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were "not entirely credible" based in part on his daily activities.  (R. 26, 28).  While it is not within the province of the Court to decide facts anew or reweigh the evidence, Phillips, 357 F.3d at 1240 n.8, substantial evidence does not support factual findings of the ALJ that appear to be critical to the ALJ's RFC assessment and his evaluation of Dr. Brilliant's medical opinion.  (R.  28–29).   For example, the Commissioner suggests that a single reference found in Dr. Brilliant's initial new patient history in December 2008 concerning claimant's purported ability to walk four to five miles a day for exercise

---

[24] Plaintiff does not assert with force that the ALJ did not apply the Eleventh Circuit's three-part standard for evaluating subjective complaints of pain. See Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991) ("The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain."). Rather, Plaintiff challenges the ALJ's determination that claimant is only partially credible.

amounts to substantial evidence that Plaintiff was capable of performing the exertional requirements of light work.[25]   There is a narrative in Dr. Brilliant's records containing general background information upon meeting Plaintiff Duncan and receiving him as a new patient.  (R. 355 / Exhibit 8F)  ("He generally seems to tolerate discomfort as he walks 4 to 5 miles a day for exercise.").   The  ALJ cites to claimant's ability to walk four to five miles a day in his discussion of Plaintiff's daily activities.  (R. 27, 29).   There are also multiple non-specific references by the ALJ/Commissioner to claimant's improvement without any differentiation between symptoms associated

---

[25] This record and the ALJ's reliance on it was debated during oral argument. The Commissioner asserts that because the statement uses the present tense ("he walks 4 to 5 miles a day"), the note tends to show that claimant was speaking and Dr. Brilliant recording Plaintiff's then present-day capacity for exercise.  At best, reliance on the single statement is questionable for a couple of reasons.  First, although written in present tense, the statement is imprecise in terms of temporal proximity as well as frequency.  (R. 355).  Secondly, the notation immediately follows a statement that claimant has "difficulty walking" and precedes a note indicating that claimant will need hip replacement.  (R. 355).  Third, in the second evidentiary hearing before ALJ Vogel, Plaintiff testified that he merely explained to Dr. Brilliant that he was able to walk four to five miles a day when he was training to take the fire department test and that his prior practice for dealing with stress after a tour (a shift at the fire station) or after somebody passed away was to go for a walk. (R. 46–47).  Plaintiff testified that he had "no mobility" in the fall of 2008.  (R. 47).  In other words, Plaintiff denied the accuracy of Dr. Brilliant's note at the time it was recorded by Dr. Brilliant.  (R. 46–47).

with claimant's left or right hip or knees and without any reference to time.[26]   One

such example is the ALJ's statement that, "treatment notes showed that the claimant's

bilateral hip and knee pain improved with surgery and physical therapy." (R. 29).  The

ALJ cited this in support of his decision to accord Dr. Brilliant's opinion little weight.

(R. 29).  Plaintiff only had surgery on his left hip.  To the extent improvement with

pain and mobility is recorded relative to claimant's left hip, there is no disagreement.

Plaintiff maintains there was no improvement of his right hip or knees.

 Further, Dr. Stoddard, whose opinion was given "great weight," found Plaintiff

credible without qualification.  Similarly, William Cain, M.D., the state agency

physician who assessed claimant's physical RFC in January 2010, justified his RFC

conclusions in part by stating that Plaintiff's "symptoms have been credible."  (R.

334).  (See also Plaintiff's Issue "D" at 19‒22).  Plaintiff is a twenty year retiree of

NYFD.  The ALJ's finding that claimant is not genuine in his complaints of pain is not

well taken.

 While the Court would be hesitant to reverse and remand on this basis alone, the

Court thinks it prudent to identify any potential mistakes of fact given that the case is

---

[26] Reference to time is significant given that the date last insured was March 31,
2009, only two months after claimant's left hip replacement.

to be taken up again on remand of other issues.  On remand, the Commissioner may re-evaluate whether these matters have any impact or bearing upon Plaintiff's credibility.[27]

## VI.   Conclusion

The Court finds that the ALJ committed reversible error in formulating his RFC and particularly with respect to the inclusion of some, but not all, of Dr. Stoddard's functional limitations without a reasoned explanation as to why the entire opinion was not accorded great weight.  Accordingly, the court finds that the decision of the Commissioner  was not supported by substantial evidence and was the result of a failure to apply the proper legal standards.  It is, therefore, **ORDERED** that the Commissioner's decision be **REVERSED** and that this action be **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings in accordance with the above discussion.  The Clerk is **DIRECTED** to enter judgment in favor of Plaintiff.

---

[27] Aside from the assertion that Plaintiff Duncan was capable of walking four to five miles a day for exercise, the fact that the ALJ rather carelessly relied upon at least one other factual misstatement (claimant's ability to attend his son's football games) gives the undersigned pause in reviewing the ALJ's factual findings for substantial evidence.

**IT IS FURTHER ORDERED** that, in the event past due benefits are awarded to Plaintiff upon remand, Plaintiff's attorney may file a motion for approval of attorney's fees under 42 U.S.C. §§ 406(b) and 1383(d)(2) no later than thirty days after the date of the Social Security letter sent to Plaintiff's counsel of record at the conclusion of the Agency's past-due benefit calculation stating the amount withheld for attorney's fees.  Defendant's response, if any, shall be filed no later than thirty days after Plaintiff's attorney serves the motion on Defendant.  Plaintiff shall file any reply within ten days of service of Defendant's response.

**SO ORDERED THIS** 31st day of March, 2016.

JANET F. KING
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)